**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **IN THE MATTER OF THE** | : | **04-MISC NOS. 318-322** |
| **SEARCH OF THE SCRANTON** | : | **(MANNION, M.J.)** |
| **HOUSING AUTHORITY** | : | |
| | : | |

## MEMORANDUM AND ORDER

Presently before the court is a "MOTION FOR THE UNSEALING OF AFFIDAVIT OF PROBABLE CAUSE IN SUPPORT OF SEARCH WARRANT AND THE UNSEALING OF THE APPLICATION AND RELATED DOCUMENTS FOR SEALING OF AFFIDAVIT, RETURN OF PROPERTY AND REQUEST FOR HEARING," (Doc. No. 6), filed on behalf of the Scranton Housing Authority.


## I.    PROCEDURAL HISTORY

By way of background, on or about December 6, 2004, search warrants were issued, the subjects of which were offices of the Scranton Housing Authority.  Simultaneously, upon motion of the government, the court sealed the application for the search warrant, the affidavit of probable cause, and the motion to seal itself. On the following day, federal agents executed the search warrants.

Some six months later, on June 8, 2005, the instant motion was filed on

behalf of the Scranton Housing Authority pursuant to Rule 41(g) of the Federal Rules of Criminal procedure[1]. The government filed its brief in opposition on June 27, 2005, (Doc. No. 8), and the movant filed a reply brief on July 7, 2005. (Doc. No. 9).

After reviewing the parties' briefs, the court issued an order dated November 8, 2005, in which the Scranton Housing Authority was directed to file a supplemental brief addressing (1) whether this is a criminal or civil matter and (2) whether the undersigned has jurisdiction to decide the matter. The government was given time to file a reply brief.  (Doc. No. 10).

On November 28, 2005, the Scranton Housing Authority filed its supplemental brief.  (Doc. No. 11).  Subsequently, on December 8, 2005, the government filed its response.  (Doc. No. 12).

On May 30, 2006, the government filed, *in camera*, documents for consideration by the court in conjunction with its brief in opposition to the

---

[1]Rule 41(g) reads as follows:

> **(g) Motion to Return Property.**  A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

unsealing of the search warrant affidavit.  (Doc. No. 16).

After a number of continuances, a hearing on the motion was held on June 1, 2006.

## II.    DISCUSSION

### A.    Nature of proceedings brought pursuant to Fed.R.Crim.P. 41(g).

Considering the supplemental briefs filed by the parties, as well as relevant case law, the court finds that the instant motion is an "independent matter" aside from any civil or criminal proceedings.  Specifically, the court is persuaded by the reasoning of <u>In the Matter of the Search of 4330 North 35th Street, Milwaukee, Wisconsin</u>, 142 F.R.D. 161 (1992)[2].  In that case, the movant filed a motion for return of cash seized by the government pursuant to a search warrant.  The government argued that the motion under former Fed.R.Crim.P. 41(e)[3] could only be brought within the context of a criminal or civil case.  In considering the matter, the court held that the Rule 41(e) motion could be brought independently, rather than only within the context of a separate civil or criminal action.  <u>Id.</u> at 163-64.  In so holding, the court relied upon several factors.

_____

[2]<u>See</u> <u>also</u> <u>Matter of Property Seized from ICS Cutting Tools</u>, 163 F.R.D. 292 (E.D. Wis. 1995).

[3]On December 1, 2002, Rule 41(e) was redesignated Rule 41(g) without substantive change. <u>See</u> Fed.R.Crim.P. 41 Advisory Committee Note to the 2002 amendments.

Initially, the court noted that there exists several cases in which Rule 41(e) motions were filed "independent" of any pending civil or criminal case, either under the magistrate judge's docket or under a "miscellaneous" docket, which encompasses those matters that are "ancillary and supplementary proceedings not defined as civil actions." Id. at 163 (citing In re One Hundred Fifteen Thousand Five Dollars in United States Currency, 777 F.Supp 418 (E.D.Pa. 1991)(filed under "Miscellaneous Docket"); In re Motion for Return of All Monies Seized, 1991 WL 183363 (S.D.N.Y. 1991)(filed under "Miscellaneous Docket"); In re Search Warrants Concerning National Insurance Consultants Incorporated, 139 F.R.D. 684 (D.Colo. 1991)(filed under same magistrate judge's docket as the initial warrants); In re Seizure of Four (4) DC-3 Aircraft, 134 F.R.D. 251 (E.D.Wis. 1991)(filed under same magistrate judge's docket as the initial warrants). Moreover, the court found that, within the context of a search and seizure warrant, the concept of an "independent" court action is not novel, noting that the court routinely issues the warrants themselves without any pending civil or criminal case. Id. at 164.

The court further looked to the language of Rule 41 itself, noting that Rule 41 is a self-contained rule, which starts by conveying the authority to issue warrants, establishes the scope of warrants and procedures for issuance, sets forth the manner in which property is to be seized and inventoried, establishes procedures for the return of property, and addresses the manner for challenging the use of the property as evidence in criminal

4

proceedings. <u>Id.</u> at 164.  The court found that, since Rule 41 was complete in itself and allowed "independent" court action on behalf of the government in the first paragraphs of the Rule, it would only be logical that the Rule would also allow "independent" court action on behalf of the party aggrieved by the government's actions.  (<u>Id.</u>).

Finally, in determining that a Rule 41(e) motion could be filed independent of any civil or criminal proceedings, the court looked to the Notes of the Advisory Committee on Rules which accompanied Rule 41(e).  Here, the court indicated that the Notes which accompanied the 1972 amendments to Rule 41(e) discussed the distinction between a pre-indictment Rule 41(e) motion brought in the district in which the property was seized and a post-indictment Rule 41(e) motion brought in the district in which the criminal case is pending.  In the former circumstance, the Committee indicated that any ruling on the motion would be "tentative[, and is best treated as] interlocutory." This "interlocutory" status would be closely parallel to the status of the initial seizure warrant, in that at the time the warrant was issued there were no civil or criminal proceedings pending.  Since Rule 41 is not intended to deny the government of the use of evidence, the ultimate disposition of the property under a Rule 41 motion is subject to further review if the government pursues criminal charges or civil forfeiture.

Finding that the pre-indictment Rule 41 motion is really only a request for modification in the terms of the warrant, which was issued by the

magistrate judge in the first instance, the court determined that the motion is not a dispositive matter in either a criminal or civil context.

In the context of the instant Rule 41(g) motion, the court finds the above reasoning to be logical and persuasive.  As such, the instant Rule 41(g) motion filed by the Scranton Housing Authority is properly maintained as an "independent matter" filed to the same Magistrate Judge's docket as the initial warrants.  It need not be filed to a separate civil or criminal action.

**B.     Jurisdiction of a Magistrate Judge to rule upon a motion brought pursuant to Fed.R.Crim.P. 41(g).**

Having concluded that the instant motion is an independent matter, not properly classified as either a civil or criminal action, the question becomes whether the undersigned has jurisdiction to decide the motion.  At the hearing held on this motion, the parties agreed that the undersigned does have jurisdiction to hear this matter. The court agrees.

Looking to In the Matter of the Search of 4330 North 35th Street, Milwaukee, Wisconsin, supra, that court, once again, went to the language of Rule 41 itself.  In doing so, the court noted that prior to the 1989 amendments to Rule 41, subpart (e) read in relevant part:

> **(e) Motion for return of property.**  A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.  The *judge* shall receive evidence on any issue of fact necessary

6

to the decision of the motion . . .

Id. at pp. 164-65.  (emphasis added).

After the 1989 amendments, the court noted that Rule 41(e) read, in relevant part, that "a person aggrieved by . . . *the deprivation of property* may move the district court for the district in which the property was seized for the return of the property . . . *The court* shall receive evidence on any issue of fact necessary to the decision of the motion."  Id. at 165.  (emphasis added).

The Notes accompanying the 1989 amendments reflect the following: The word "judge" is changed to "court" in the second sentence of subdivision (e) to clarify that a magistrate [judge] may receive evidence in the course of making a finding or a proposed finding for consideration by the district judge. Id.

Given the above, Judge Goodstein reasoned that the word "court" in the first sentence of subsection (e) would refer to both district judges and magistrate judges.  He reasoned that, if it were intended that the word "court" in the first sentence was to have a different meaning from the use of the same word in the second sentence, the drafters would have substituted the word "judge" or "district judge" for the word "court" in the first sentence.  Id.

Judge Goodstein further reasoned that the phrase in the Notes accompanying the amendments that "a magistrate [judge] may receive evidence in the course of making a *finding*. . .," connoted a decision by the magistrate judge, as opposed to a recommendation, while the subsequent

7

language that a magistrate judge may receive evidence in the course of making ". . .a *proposed finding* for consideration by the district judge," clearly connoted a recommendation by the magistrate judge[4]. Id. at 166. (emphasis added).   Otherwise, if the drafters of the 1989 amendments wanted to empower only Article III judges to resolve Rule 41(e) motions, the court found that there would have been no reason to remove the term "judge" from the subsection. Id. This reading was found to be consistent with the language in the Magistrates Act at 28 U.S.C. §636(b)(1)(B), which authorizes district judges to refer matters to a magistrate judge to conduct a hearing and submit to the district judge "*proposed findings* of fact and recommendations for the disposition" of a motion. (Emphasis added).

The court in, In the Matter of the Search of 4330 North 35th Street, Milwaukee, Wisconsin, found that, if Rule 41(e) only allowed the magistrate judge to take evidence for consideration by a district judge, there would be no distinction between a "finding," and a "proposed finding."   Thus, the court determined that the use of the term "finding," together with the term "proposed finding," indicates that the former refers to the situation where the magistrate

_____

[4]Cf. Search of 6731 Kennedy Avenue, 131 F.R.D. 149 (N.D.Ind. 1990), finding that the same language of the Notes accompanying the 1989 amendments meant that any finding or proposed finding by the magistrate judge was for consideration by the district judge.   However, we are not persuaded by this interpretation of the notes.   It appears to us that "a finding" or "a proposed finding" are different phrases signifying two different legal procedures.

judge is exercising primary jurisdiction and making a decision on the matter. Id. at 166.

Finally, it is incongruous that the legislature would vest a magistrate judge with the awesome authority to issue search warrants under Rule 41, yet not give the seemingly lesser authority to return that property, if appropriate under the same Rule.  This court holds that it retains jurisdiction to decide the merits of the pending Rule 41(g) motion.


### C.    Movant's request for hearing.

The Scranton Housing Authority argues in the instant motion that, in seeking the return of property under Rule 41(g), there is an "absolute right" to an evidentiary hearing.  (Doc. No. 7, p. 11).

Rule 41(g) directs that a district court must receive evidence on any factual issue necessary to decide a Rule 41(g) motion.  However, "a district court need not necessarily conduct an evidentiary hearing on every Rule 41(g) motion."    United States v. Hernandez, 2006 WL 618429 (M.D.Pa. 2006)(quoting United States v. Albinson, 356 F.3d 278, 280 (3d Cir. 2004)). Evidentiary hearings are required only when a movant alleges facts that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented.   U.S. v. Migely, 596 F.2d 511 (1st Cir. 1970); U.S. v. Clifford, 297 F.Supp.2d 308 (D.Me. 2003).  When a motion alleges facts which, if proven, will require a grant of relief, an

evidentiary hearing will be set.  Grant v. United States, 282 F.2d 165 (2d Cir. 1960); Austin v. United States, 297 F.2d 356 (4th Cir. 1961).  It is an abuse of discretion for the court to refuse to hold a hearing if factual issues are sufficiently raised.  U.S. v. Albinson, supra.  (emphasis added).

Here, while the court finds that there were no factual issues sufficient to require an evidentiary hearing on the instant motion, at the request of counsel, the court nonetheless held a hearing on June 1, 2006.

**D.   Movant's request that the government be compelled to cease its search of movant's files that contain materials subject to the attorney-client privilege and protocols be established to protect confidential attorney-client communications.**

The movant argues that, in conducting their search, government agents seized eight boxes of files that contained primarily, if not exclusively, materials protected by the attorney-client privilege[5].  The movant contends that government agents acknowledged that some of the material was protected by the attorney-client privilege and has returned these materials.  According to the movant, a government "taint team" reviewed the materials to determine

---

[5]At the hearing, counsel for the movant agreed that the "eight" boxes was an estimate based upon hearsay information he had received from sources present on the day of the search.  In response, counsel for the government proffered that only five boxes were taken.  Counsel for the movant indicated he would rely upon the government counsel's proffer that there were only five boxes.  Since the hearing, counsel for the government has reconfirmed, with the federal agents responsible for the search, that only five boxes of documents were taken. The court finds no cause to disagree with this information.  (Doc. No. 17).

what was privileged.

Citing to <u>United States v. Neill</u>, 952 F.Supp. 834 (D.D.C. 1997), the movant argues that courts have increasingly called into question the legitimacy and advisability of the practice of trusting the government to separate privileged from unprivileged documents and that use of such procedures constitutes a *per se* intentional intrusion on the attorney-client privilege.  The movant argues that the government bears the burden to rebut the presumption that tainted materials were provided to the prosecution team.

Based upon the above, the movant argues that the government should be ordered to immediately cease any "taint team" review of potentially privileged materials and any review should be conducted by a neutral and detached judge or court-appointed special master.

In response to the movant's contentions, the government indicates that during the search of the office of David Baker, SHA Director, then counsel for SHA advised that some of the boxes in Mr. Baker's office related to a civil lawsuit filed against SHA by tenants and therefore could possibly be covered by the attorney-client privilege. The government contends that on the day of the search, by agreement, the agents sealed all of the boxes containing records from Mr. Baker's office and sent them to the U.S. Attorney's Office for an independent review.  The records were subsequently reviewed by the First Assistant United States Attorney, who identified those records deemed to be privileged and sealed them.  According to the government's materials, these

records remained sealed until April 6, 2005, when they were turned over to counsel for SHA.  Those records determined by the First Assistant United States Attorney not to be privileged were turned over to the agents for analysis, copies of which have been supplied to counsel for the movant by counsel for the government.

The government argues that the independent review of records by an attorney not involved in the investigation, to determine whether any of the records were privileged, is a practice endorsed by the Department of Justice, and that courts have routinely accepted such a procedure.

Although endorsed by the Department of Justice and accepted by some courts, See U.S. v. Hunter, 13 F.Supp. 574 (D.Vt. 1998)(court approved the use of taint team by prosecution, but indicated that it would be preferable for screening to be done by a special master or magistrate judge); U.S. v. Skeddle, 989 F.Supp. 890 (N.D.Ohio 1997), the use of government taint teams has often been questioned or outright rejected by the courts, at least in the context of criminal prosecutions.  See e.g., Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955 (3d Cir. 1984); In re the Seizure of all Funds on Deposit in Accounts in the Names of National Electronics, Inc., at JP Morgan Chase Bank, 2005 WL 2174052 (S.D.N.Y. 2005); U.S. v. Stewart, 2002 WL 1300059 (S.D.N.Y. 2002); U.S. v. Neill, 952 F.Supp. 834 (D.D.C. 1997); U.S. v. Abbell, 914 F.Supp. 519 (S.D.Fla. 1995), In re Search Warrant for Law Offices, 153 F.R.D. 55 (S.D.N.Y. 1994).

To the extent that the movant seeks an order from this court directing the government to cease its search of the boxes of materials which allegedly contain documents protected by the attorney-client privilege, it appears that the taint team has concluded its search of the boxes of materials in question. Additionally, the government has returned those materials deemed privileged to counsel for the movant, while materials deemed non-privileged have been turned over to the agents for review in relation to the on-going investigation, with copies of those same documents provided to counsel for the movant.

In light of this, the movant's motion appears moot and this court need not decide the legality of the government's use of an AUSA not involved in the prosecution as the "taint team." The taint team's review has been completed and the movant's counsel has originals and/or copies of all documents. Moreover, although in possession of originals an/or copies of <u>all</u> documents, movants have not identified even a single document it alleges is, in fact, "privileged." However, if counsel for the movant believes that any documents retained by the government are in fact privileged, a motion to suppress the use of that evidence may be appropriate after an indictment is returned.

### E.    Movant's request for the unsealing of the affidavit of probable cause and related documents.

The movant argues that the sealing of an affidavit of probable cause in support of a search warrant is contrary to the express provisions of Rule 41(g).  While acknowledging that there is little case law on the issue of a

search target's right of access to a sealed affidavit in the Third Circuit, the movant argues that other federal courts have allowed such access, finding it essential to conducting of a meaningful hearing under Rule 41.  (Doc. No. 7, p. 17).

Citing to three district court cases, In re Search of the Offices and Storage Areas Utilized by Stephen P. Amato, 2005 U.S. Dist. LEXIS 6870 (D.Me. April 14, 2005); In re Search Warrants Issued on April 26, 2004, No. 04-1603, 2004 U.S. Dist. LEXIS 25848 (E.D.Md. Dec. 23, 2004); and In the Matter of the Search of Up North Plastics, Inc., 940 F.Supp. 229 (D.Minn. 1996), the movant argues that the target of a search has a Fourth Amendment right to examine an affidavit of probable cause and that, in order for the government to keep an affidavit under seal, it must demonstrate (1) a compelling governmental interest in keeping the affidavit under seal, and (2) that no less restrictive means, such as redaction, are available.

With respect to the movant's request to unseal the affidavit of probable cause and related materials, the decision to grant or deny access to warrant materials is committed to the sound discretion of the judicial officer who issued the warrant, and denial of access is appropriate if it is "'essential to preserve higher values and is narrowly tailored to serve that interest.'" Baltimore Sun Co. v. Goetz, 886 F.2d 60, 65-66 (4th Cir. 1989)(citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984)).  See also, In re Newsday, Inc., 895 F.2d 74, 79 (2d Cir.), (decision to seal documents related

to a search warrant lies within the discretion of the court), cert denied, 498

U.S. 892 (1990); In re Searches of Semtex Indus. Corp., 876 F.Supp. 426,

429 (E.D.N.Y. 1995).  A court is, however, obligated to consider a request for

access to sealed documents.  See Newsday, 895 F.2d at 79; Semtex, 876

F.Supp. at 429.  Moreover, alternatives to sealing, such as redaction, must be

considered.  Baltimore Sun Co., 886 F.2d at 65-66.

In considering the issue, at least two Courts of Appeal have come to the

conclusion that there is no Fourth Amendment right to examine an affidavit of

probable cause prior to indictment.  In re Grand Jury Proceedings, 115 F.3d

1240, 1246 (5th Cir. 1997); In re EyeCare Physicians of Am., 100 F.3d 514,

517 (7th Cir. 1996)("no provision within the Fourth Amendment grants a

fundamental right of access to sealed search warrant affidavits before an

indictment")[6].  In addition, the court in In the Matter of the Search of Flower

Aviation of Kansas, Inc., 789 F.Supp. 366 (D. Kan. 1992), found that the

search target was not entitled to unseal affidavits for search warrants

particularly because an indictment had not yet been issued.  Like the above-

cited cases, the court finds that the movant in this case does not have a

Fourth Amendment right of access to the sealed documents prior to

indictment.

However, even assuming, *arguendo*, that a Fourth Amendment right of

---

[6]Cf. United States v. Oliver, 208 F.3d 211 (Table), 2000 WL 263954 (4th Cir. 2000).

access to the sealed search warrant materials does exist, that right is not absolute.   For example, if the government can establish a compelling governmental interest in keeping the affidavit under seal and that no less restrictive means are available, such as redaction, the materials may remain sealed.

In Times Mirror Co. v. United States, 873 F.2d 1210 (9th Cir. 1989), the Ninth Circuit considered arguments under the First Amendment, common law and former Fed.R.Crim.P. 41(g)[7], for unsealing warrant applications.  In that case, the court found no "right of access to search warrant proceedings and materials when an investigation is ongoing but before indictments have been returned."  Id. at 1218.  In considering this same issue, the court in Semtex, supra, refused to unseal any warrant documents citing to a continuing need for secrecy during the ongoing investigation.  The court did, however, find that "disclosure should not be postponed indefinitely."  Semtex, 876 F.Supp. at 429.

Here, the government argues that any unsealing of the search warrant materials in this case would jeopardize the integrity of the ongoing criminal investigation relating to programs run by the SHA and expose informants to retaliation.  Based upon information contained within the sealed materials, which this court has reviewed, the government argues that the potential for retaliation against government informant(s) is real in this case, and even

---

[7]Now found at Fed.R.Crim.P. 41(i).

16

redaction would not protect the informant(s) identity/identities.

In issuing the warrants, the court found sufficient basis to seal the affidavit and related materials.  In light of the instant motion, the court has again reviewed the sealed materials in this case.  After having done so, the court concludes that there is no need to keep sealed the government's application for the search warrant[8], its motion to seal or the court's sealing order.  It will be directed, therefore, that these documents be unsealed.

However, with respect to the affidavit in support of the search warrant, this document contains detailed, confidential information which the court concludes, if disclosed, would compromise the ongoing investigation and likely lead to retaliation against witnesses.  To this extent, virtually every page of the affidavit contains references to conversations and events, and reveals the nature and scope of the on-going investigation.  The court has considered whether other less restrictive means are available.  Given the detail of the information contained in the affidavit, any attempt at redaction would be ineffective at preserving the integrity of the investigation and the

---

[8]The application for the search warrant is actually titled "Application and Affidavit for Search Warrant."  However, the affidavit has been filed as a separate document attached to the application.  The court's referral to the "application for the search warrant" does not include the attached *affidavit*. The court has treated the search warrant, application for the search warrant, affidavit in support of the search warrant, motion to seal the search warrant, and the order to seal the search warrant as different items in this memorandum.  In other words, any reference to the *application* for the search warrant does not include the *affidavit* in support of that application.

17

identity/identities of the government informant(s).

Therefore, in light of the sworn statements in the affidavit, as well as the *in camera* submission of the government concerning the retaliatory actions of certain individuals at the SHA offices in relation to the ongoing investigation and under other circumstances,  (Doc. No. 16), the court finds that redaction is not a reasonable alternative to leaving the warrant under seal.

Additionally, the government proffered during the hearing that this matter is under active investigation by a federal grand jury.  In light of the foregoing, the motion to unseal the affidavit of probable cause will be denied at this time, however, renewal of the motion may be appropriate if an indictment is not forthcoming within a reasonable period of time. (See In re Search Warrant Executed February 1, 1995, 1995 WL 406276 (S.D.N.Y.)).


### F.    Movant's request for return of property.

With respect to the movant's request for return of property, in United States v. 608 Taylor Avenue, 548 F.2d 1297 (3d Cir. 1978), another case involving a pre-indictment motion for the return of property seized by the government, the Third Circuit noted that "a court must weigh the interest of the government in holding the property against the owner's rights to use the property."  A similar test was subsequently set forth in Government of the Virgin Islands v. Edwards, 903 F.2d 267 (3d Cir. 1990), which involved a post-conviction motion for return of property under former Rule 41(e).  In Edwards,

18

the court stated that "[t]he Advisory Committee Notes to the 1989 Amendment [to Rule 41(e)] suggest merely that 'reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property,' a standard comparable to that which we used on 608 Taylor Avenue." Edwards, 903 F.2d at 273.  The Advisory Committee Notes further provide that "[i]f the United States has a need for the property in investigation or prosecution, its retention of the property generally is reasonable.  But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would be unreasonable."

While the Third Circuit is in the minority with respect to the standard to be used in considering a motion for return of property[9], the 'reasonableness standard' is the law of the Third Circuit and will be followed by this court, as it has by other courts in this district.  See e.g., United States v. Lamplugh, 956 F.Supp. 1204, 1207 (M.D.Pa. 1997)[10].

---

[9]A majority of courts have held that a motion for return of property, prior to an indictment, requires that the movant establish that (1) there is no other adequate remedy at law and (2) the movant will suffer irreparable harm if the property is not returned.  See e.g., Black Hills Inst. Of Geological Research v. Department of Justice, 967 F.2d 1237, 1239 (8th Cir. 1992); Floyd v. United States, 860 F.2d 999, 1003 (10th Cir. 1988); Mr. Lucky Messenger Serv., Inc., v. United States, 587 F.2d 15, 16 (7th Cir. 1978).

[10]In another Middle District Case under Rule 41(e), the court utilized the irreparable harm standard. Tyagi v. DiStatzu, 809 F.Supp. 10 (M.D.Pa. 1992). However, in that case, the court was concerned whether the plaintiff could be compensated by money damages in lieu of the return of property, an issue not currently before this court.  Moreover, it appears that the court in Tyagi did not

When a motion for return of property is made before an indictment is filed, but while a criminal investigation is pending, it is the movant who bears the burden of proving that he is entitled to the property.  In re Grand Jury Subpoena Duces Tecum Issued to: Roe & Roe, Inc., 49 F.Supp.2d 451 (D.Md. 1999)(citing United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987)(citations omitted)).

The court, therefore, will consider the movant's argument that it has been aggrieved by the deprivation of property under the reasonableness standard set forth by the Third Circuit in 608 Taylor Avenue. The movant's argument, however, must be balanced against the government's interest in the continued retention of the seized property, as well as the threat of interference that the instant motion poses to the ongoing investigation.

Here, in considering the government's interest in the continued retention of the property, the government is in the process of conducting a grand jury investigation into fraud by various officials at the SHA.  The returns filed with the court, subsequent to the execution of the warrants in this case, reflect a sizeable amount of information which needs to be reviewed to determine its relevance to the on-going criminal investigation.  Any direction by the court that the property be returned to the movant at this point, would certainly interfere with the on-going investigation.  Further, as proffered at the hearing,

_____

consider the Third Circuit's holding in 608 Taylor Avenue or its adoption in Edwards.

20

the movant has been provided with copies of all seized documents, or at least has been given access to all seized items with the option of receiving copies.

With respect to the computer files seized, only mirror images were made of the hard drives, the <u>original</u> hardware remained onsite and in the custody of the movant.  Given this, there is no indication that the movant is suffering <u>any</u> prejudice by the government's continued retention of the property.  Therefore, the interests of the government in retaining the property and information seized clearly outweigh the interests of the movant.  Additionally, the court can find no prejudice to the movant since it actually retains the original hardware, copies of all seized documents and originals of any alleged privileged documents.

Further, the court has evaluated the movant's claim that it has been aggrieved by an unlawful search and seizure of property using reasoning similar to that set forth in <u>Donlon v. United States</u>, 33 F.Supp. 979 (D.Del. 1971)[11].  Specifically, in light of the movant's arguments, and the pre-

---

[11]In <u>Donlon,</u> the government seized property that could be used in illegal gambling operations from the movant's home.  The movant filed a pre-indictment Rule 41(e) motion arguing, in part, that the search warrant was unconstitutional because it lacked probable cause.  Ultimately, the court decided not to reach the merits of the motion. In doing so, the court reasoned, among other things, that "the alleged unconstitutionality of the search and seizure was not absolutely clear on the face of the proceeding" in that the government had "obtained a warrant by the usual means based upon at least a colorable allegation of probable cause and the search was otherwise validly executed."  Thus, the court did not look to determine whether there was actual probable cause to support the warrant, but only whether there was "a

indictment stage of the proceedings, the court need only consider whether the alleged unconstitutionality of the search and seizure was "clear on the face of the proceeding" and "whether the government had obtained a warrant by the usual means . . . and the search was otherwise validly executed."  Donlon, 331 F.Supp. at 980-81.

Additionally, in its motion seeking the return of all property and information seized pursuant to the warrants, the SHA argues that the warrants were in violation of the Fourth Amendment because the government has clearly effectuated an effort to execute a constitutionally infirm general warrant[12] only giving the appearance of particularity.  According to the movant, the description provided by the government of the items to be searched and seized is an exercise of inclusiveness rendering the warrant a general warrant.  The movant argues that the description provided essentially covers anything that could be found in the SHA offices.

The Fourth Amendment's Warrant Clause prohibits warrants that are not "particularly [descriptive of] the place to be searched and the persons or

---

colorable allegation of probable cause."

Subsequently, after indictment, the movant renewed his Rule 41(e) motion.  At that time, the trial court engaged in a full-fledged Fourth Amendment probable cause analysis. It was then that the court determined that the search warrant lacked probable cause, granted the movant's motion, suppressed the evidence, and ordered the government to return the property.

[12]"A general warrant is one which authorizes 'a general exploratory rummaging in a person's belongings.'" United States v. Christine, 687 F.2d 749, 752 (3d Cir. 1982).

things to be seized."  Intending to prevent wholesale searches caused by general warrants, the Warrant Clause limits the scope of a lawful search to one "'defined by the object of the search and the places in which there is probable cause to believe it may be found.'" <u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987).

In order to be constitutional, a warrant will "not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through . . . papers in search of criminal evidence." <u>Id.</u> at 753.  Nevertheless, a warrant may be drafted not so much with exacting precision, but in a manner "particular enough [to be] read with reasonable effort by the officer executing the warrant." <u>United States v. Maxwell</u>, 920 F.2d 1028, 1031 (D.C. 1990).  A warrant is not considered a "general warrant" simply because it employs broad language such as "all" when the warrant further describes the material sought in "specific and inclusive terms."  <u>Christine</u>, 687 F.2d at 752 (warrant was not general when describing "all other documents, papers, instrumentalities and fruits of the crime.").  This is based upon the fact that it is the magistrate judge, rather than the executing officer, who determines what is to be seized. <u>Id.</u>

"The degree of specificity required [in the warrant] depends on the crime involved and the types of items sought." <u>United States v. Blakeney</u>, 942 F.2d 1001, 1026 (6th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1035 (1992). Moreover, "[h]ow detailed the warrant must be follows directly from the nature of the

items there is probable cause to seize." <u>United States v. Bentley</u>, 825 F.2d 1104, 1110 (7th Cir.), <u>cert. denied</u>, 484 U.S. 901 (1987).

With respect to the instant action, the attachments to the warrant specifically limited the search and seizure to those items for the period of January 2000 through the date of the search which related to violations of "Title 18 United States Code (USC) 1001, 1347, 242, 241 and 1341, false statements to HUD, depriving citizens of honest services, mail fraud and depriving someone of their due process." In reviewing the specific list of items to be searched and/or seized, the warrants in this case were only "general" to the extent necessary due to the offenses involved and the nature of the items to be seized. However, they did "not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through . . . papers in search of criminal evidence." Therefore, the movant's argument that the warrants in question were "general warrants" is without merit.

Even to the extent that the warrants issued herein were not general warrants, the movant argues that, at the least, they were overbroad. Specifically, the movant argues that by seizing and/or copying the bulk of the paper files and documents and all of the computer equipment, the warrants were overly broad in their scope.

In order to determine whether a search warrant is overbroad, the court "must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit." <u>In</u>

re Impounded Case (Law Firm), 840 F.2d 196, 200 (3d Cir. 1988).

In the instant case, considering the list of items to be searched and/or seized, in conjunction with a review of the detailed affidavit in support of the warrants, the court finds that the scope of the warrant properly fell within "the ambit of probable cause established by the supporting affidavit." In re Impounded Case, 840 F.2d at 200. Consequently, the movant is not entitled to the return of any seized property due to the alleged infirmities in the search warrant[13].

The movant further argues that, despite the limitations on the face of the warrant that the search be conducted on or before December 10, 2004, the search of the movant's documents continues up until today, through electronic analysis and review. However, the purpose of the time limitation set forth in Fed.R.Crim.P. 41(c) is to prevent stale warrants. In order to successfully challenge a search as being outside of the time period of the warrant, a movant must establish that probable cause for the search no longer exists and that legal prejudice has been suffered. See United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (2002).

Here, actual documents were seized and copied, and mirror images were made of the computer files within the time period provided in the

---

[13]Again, the court is aware that the movant, at this time, does not have access to the affidavit in support of the warrants. Therefore, denial of the movant's request for return of property will be without prejudice, subject to renewal, if necessary, before the trial court following indictment and after the unsealing of the affidavit.

25

warrants.  Thus, the evidence was essentially "frozen in time."  Id.  Given this, there was no danger that probable cause no longer existed at the time of the search of the documents.  Id. (citing United States v. Bedford, 519 F.2d 650, 655-56 (3d Cir. 1975); United States v. Gerald, 5 F.3d 563, 567 (D.C.Cir. 1993)).  Further, methods for the search of computer documents set forth in the attachments to the warrants included an off-site search of the documents, if needed.  As long as the search time is reasonable under the circumstances, the continued off-site search will not violate the Fourth Amendment.  Id. (citing Berger v. New York, 388 U.S. 41, 58-61 (1967); United States v. Snow, 919 F.2d 1458, 1461 (10th Cir. 1990); U.S. Postal Serv. v. C.E.C. Serv., 869 F.2d 184, 187 (2d Cir. 1989); United States v. Henson, 848 F.2d 1374 (6th Cir. 1988)).

Overall, computer searches cannot be subject to any rigid time limit because they potentially can involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution.  Id. (citing Commonwealth v. Ellis, 1999 LEXIS 368 (Mass.Super.)). Furthermore, neither Rule 41 nor the Fourth Amendment impose any time limitation on the government's forensic examination of seized evidence.  Id. (citing United States v. Sanchez, 689 F.2d 508, 512 n.5 (5th Cir. 1982); United States v. Hernandez, 183 F.Supp.2d 468, 480-81 (D.P.R. 2002)).  Thus, the government is not required to complete the examination of seized evidence, including the computer mirrored images, within the time period set forth in the

warrant.  The movant's argument to the contrary is unpersuasive.

The movant also argues that the warrants issued in this case provide no indicia of any criminal conduct.  Despite the movant's contention, "Attachment B" to the warrants clearly reflects:

### PROPERTY TO BE SEARCHED [ATTACHMENT B]

> Based upon information and evidence described in the AFFIDAVIT [ATTACHMENT A], this affiant believes that the following computers and computer-related media and equipment, contain evidence relating to violations of Title 18 United States Code (USC) 1001[14], 1347[15], 242[16], 241[17] and 1341[18], false statements to HUD, depriving citizens of honest services, mail fraud and depriving someone of their due process."

Thus, there is certainly an "indicia" of criminal conduct set forth in the attachments to the warrants.

The movant further argues that the warrant does not state, with particularity, how the documents are to be searched and/or seized, thereby

------

[14]Title 18, Crimes and Criminal Procedure, Part I. Crimes, Chapter 47 Fraud and False Statements, §1001 Statements or entries generally.

[15]Title 18, Crimes and Criminal Procedure, Part I. Crimes, Chapter 63 Mail Fraud, §1347 Health care fraud.

[16]Title 18, Crimes and Criminal Procedure, Part I. Crimes, Chapter 13 Civil Rights, §242 Deprivation of rights under color of law.

[17]Title 18, Crimes and Criminal Procedure, Part I. Crimes, Chapter 13 Civil Rights, §241 Conspiracy against rights.

[18]Title 18, Crimes and Criminal Procedure, Part I. Crimes, Chapter 63 Mail Fraud, §1341 Frauds and swindles.

giving agents unfettered discretion to look at every document stored upon the seized computers.  Initially, the methods to be used in the search of the computers of the SHA are set forth in Attachment C to the search warrants. In any event, the Supreme Court has recently reiterated its position that the Fourth Amendment does not set forth some general "particularity requirement." United States v. Grubbs, 126 S.Ct. 1494, 1500 (2006). Rather, the Fourth Amendment only specifies two matters that must be "particularly describ[ed]" in the warrant: "the place to be searched" and "the persons or things to be seized." Id. "Nothing in the language of the Constitution or in [the Supreme Court's] decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed." Id. at 1500-1501 (quoting Dalia v. United States, 441 U.S. 238, 255 (1979)).

## III. CONCLUSION

In light of the foregoing discussion, the evidence in the record and the information produced at the hearing held on June 1, 2006, **IT IS HEREBY ORDERED THAT:**

**(1)** the movant's request that the government be compelled to cease its search of files that allegedly contain materials subject to the attorney-client privilege and that protocols be

established to protect any attorney-client communications is **DISMISSED** as moot;

**(2)** the movant's request to unseal the application for the search warrant, the motion to seal the search warrant, and the order to seal the search warrant is **GRANTED**, and the Clerk of Court is directed to unseal these documents;

**(3)** the movant's request to unseal the affidavit in support of the search warrant is **DENIED**; and

**(4)** the movant's request for return of property is **DENIED**, as it has already occurred with respect to the attorney-client materials and the movant has copies or originals of all other seized materials.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** June 22, 2006
O:\shared\Memorandums\2004 MEMORANDUMS\04-318-322-m.01.wpd